UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:22-cr-00194 (APM) |
| v. : | |
| : | |
| JAMIE L. FERGUSON, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Jamie L. Ferguson to 30 days' home detention as a condition of a two-year term of probation, 60 hours of community service, and $500 restitution.

**I.   Introduction**

The defendant, Jamie L. Ferguson ("Ferguson"), participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than $2.8 million dollars' in losses.[1]

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol exceeded $2,881,36020 dollars. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

Ferguson pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of 30 days' home detention as part of a two-year term of probation is appropriate in this case.

While the riot could not have succeeded without the participation of individuals including Ferguson and others, her sentence should reflect her individual role in the riot. Here, the government has not found evidence that Ferguson engaged in violence or destruction of property during the riot, or that she espoused or excused violence or insurrection. As discussed further below, Ferguson served as a uniformed member of the United States Air National Guard from 2001 until 2022, with five separate periods of active duty, and two overseas deployments.[2] In addition, before being charged, and without any type of immunity or other consideration, Ferguson agreed to be interviewed by the FBI and incriminated herself. Additionally, at the government's request, and as detailed further below, Ferguson has provided assistance in two ongoing misdemeanor investigations related to the events of January 6, 2021. Moreover, she did so without a formal agreement either requiring or rewarding her for her assistance. In other words, rather than seeking to evade justice, Ferguson displayed candor and contrition in her dealings with law enforcement related to this case and assisted in the due administration of justice. Consequently, these factors show that a sentence of incarceration is not required in this case.

I.   **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 11 (Statement of Offense), at 1-13. In doing so, however, the government in no way intends to deemphasize the importance of acknowledging that each participant in a riot

---

[2] Military records, Exhibit A.

2

is part of that riot. As Judge Chutkan recognized, "A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers." *United States v. Matthew Mazzocco*, 21-CR-54 (TSC), ECF No. 32, p. 25. Judge Lamberth similarly wrote,

> Some of the rioters—now defendants in criminal cases—directly contributed to this violence by assaulting members of law enforcement or by planning, preparing, and facilitating this violence. Others, like Little here, did not directly assault officers. But even Little and those who engaged in this "lesser" criminal conduct were an essential component to the harm. Law-enforcement officers were overwhelmed by the sheer swath of criminality. And those who engaged in violence that day were able to do so because they found safety in numbers.

*United States v. James Leslie Little*, 21-CR-315 (RCL), ECF No. 43, p. 2. From the most mundane actions to the most violent, each rioter, including Ferguson, contributed directly and indirectly to the violence and destruction of that day.

*Ferguson's Role in the January 6, 2021 Attack on the Capitol*

As Ferguson described in a pre-arrest interview and conversation with Federal Bureau of Investigation ("FBI") agents, on January 6, 2021, from 9:00 a.m. to 9:30 a.m., she was present at the "Stop the Steal" rally at the White House with her parents. Ferguson confirmed that she was wearing blue jeans and a dark colored hooded sweatshirt with the phrase "Trump Girl" on it. After the rally, she proceeded with the crowd to the U.S. Capitol. She admitted to interviewers that she entered the building and stayed in the Rotunda area for approximately 40 minutes. Ferguson gave agents access to her cell phone and provided relevant digital images and videos.



Ferguson entered the U.S. Capitol at approximately 2:42 p.m., via the east front Rotunda doors as rioters flowed into the building from multiple breach points. As shown in the photograph immediately below, it appears that an officer wearing a blue knit hat in the lower left corner of the photo was physically engaged with rioters when Ferguson entered the Capitol. Ferguson was very likely aware when she entered the Capitol that police had unsuccessfully attempted to prevent rioters from entering the Capitol through the very door that she passed through.



Ferguson proceeded to the Rotunda, where she remained until approximately 3:18 p.m.





At approximately 3:18 p.m., Ferguson moved into the Rotunda door interior, as officers were attempting to remove rioters from the building and reestablish security.



Ferguson exited the building via the east front Rotunda doors at approximately 3:33 p.m.

*Ferguson's Social Media Posts*

On January 3, 2021, Ferguson shared an article on her Facebook account with a picture of a crowd in front of the U.S. Capitol building with a storm cloud and Mt. Rushmore above the building that read "Jan 6, 2021 – A Storm of Patriots will fight for the Republic, this will be an historic day…." Ferguson captioned this post stating, "I pray this is exactly what DC will look like on Jan 6th. #HoldTheLine." One of the comments on the post asked "Are you going?" and Ferguson replied, "I Am."





*The Charges and Plea Agreement*

On May 10, 2022, Ferguson was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On May 12, 2022, Ferguson voluntarily appeared in the district court in the Western District of Virginia. The parties began plea negotiations before Ferguson had her initial appearance in this district on May 17, 2022.

The government sent the formal paperwork for a plea agreement on June 13 and, four days later, Ferguson returned executed copies. On July 6, 2022, Ferguson was arraigned on a four count Information, and in the same proceeding entered a plea of guilty to Count Four, charging her with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. By plea agreement, Ferguson agreed to pay $500 in restitution to the Architect of the Capitol.

8

## II. Statutory Penalties

Ferguson now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, she faces up to six months of imprisonment, a fine of not more than $5,000, and a $10 special assessment. She must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## III. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' home detention, as part of a two-year term of probation.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

9

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at a defendant's individual conduct, this Court, in determining a fair and just sentence, should look to a host of aggravating and mitigating factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Ferguson personally engaged in violence or destruction, she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on her part is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Ferguson from most other misdemeanor defendants.

As several other sentencing proceedings for these defendants have shown, the expression of remorse can be an unreliable watermark in January 6 cases. As Judge Chutkan explained:

> And I take into account the government's statement and [defense counsel]'s statement that he accepted early responsibility. But [the defendant's] remorse—and I believe his remorse is sincere—[the defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.

*United States v. Matthew Carl Mazzocco*, 21-CR-54 (TSC), ECF No. 32, pp. 29-30. Judge Lamberth expressed even more skeptical views:

> The Court often finds it difficult to ascertain the sincerity of these particular defendants' remorse. Many defendants appear sincere at sentencing, boasting of their purportedly deep shame, regret, and desire to change and be law-abiding citizens. But this Court is all too familiar with crocodile tears. Indeed, one day after being sentenced to probation, another January 6 defendant made statements in an interview that directly conflicted with the contrite statements that she made to the undersigned.

*United States v. James Leslie Little*, 21-CR-315 (RCL), ECF No. 43, pp. 3-4.

However, in this case, based on Ferguson's prompt acceptance of responsibility, her ongoing cooperation with investigators, and her plea colloquy demeanor, the government assesses her expressions of remorse as genuine. Accordingly, the nature and the circumstances of this offense render the government's recommended sentence of 30 days home detention as a condition of 24 months' probation and 60 hours of community service sufficient but not greater than necessary to reflect the seriousness of the instant offense, to promote deterrence, to protect the public from future crimes that may be committed by Ferguson, and to avoid unwarranted disparity.

### B. Ferguson's History and Characteristics

As set forth in the Presentence Investigation Report ("PSR"), Ferguson is a 45-year-old woman with both military service and civilian employment history. PSR ¶¶ 35, 62-68. Ferguson

11

served in the United States Air National Guard from 2001 until 2022. PSR ¶ 64. Initially trained as a Materiel Management Journeyman (supply), she later retrained for designation as an Aerospace Medical Service Craftsman, earning certification as an Emergency Medical Technician.[3] During her uniformed service, Ferguson had five separate periods of active duty, and two overseas deployments, in support of named operations.[4] Ferguson achieved the rank of Technical Sergeant (E6) and received numerous decorations.[5] Ferguson also reported intermittent civilian employment, working as a delivery driver (March 2022 – Present), spa attendant (January – May 2022), assistant office manager (February – September 2013). PSR ¶¶ 63, 67, 68. Ferguson has no known criminal convictions or arrests.[6] PSR ¶¶ 25-31.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[7] As with the nature and circumstances of the offense, this factor, in most

---

[3] *See* Ferguson military records, Exhibit A, pp. 5 and 7.

[4] *Id*. pp. 7-14 (In 2014, Ferguson deployed to Al Udeid, Qatar, in support of OPERATION ENDURING FREEDOM, and in 2017, she deployed to the same location, in support of OPERATION FREEDOM SENTINEL).

[5] Ferguson was demoted to the rank of Staff Sergeant on August 6, 2022, because of her conduct in the instant offense. PSR ¶ 65.

[6] Ferguson has a history of minor traffic infractions as noted in the PSR ¶¶ 26-30.

[7] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

cases (this case being the rare exception), supports a sentence of incarceration, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy.

13

It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 24 ("What happened on that day was nothing less than the attempt of a violent mob to prevent the orderly and peaceful certification of an election as part of the transition of power from one administration to the next, something that has happened with regularity over the history of this country. That mob was trying to overthrow the government.") (statement of Judge Chutkan).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

Though general deterrence weighs in favor of a sentence of incarceration, Ferguson's case represents the rare exception. Though her social media posts suggest that Ferguson anticipated the possibility of violence, she was dressed in normal street clothes, not wearing any protective equipment, and unarmed. Though Ferguson was inside the U.S. Capitol for an extended period (approximately 45 minutes), she did not enter any sensitive areas and her movements were confined to the Rotunda and Rotunda door interior. Additionally, there is no indication that Ferguson attempted to conceal or destroy evidence, and she was cooperative with investigators at the outset, agreeing to a pre-arrest interview without requesting any type of immunity or other consideration. The government has not found evidence that Ferguson engaged in acts of violence or destruction of property. Ferguson promptly accepted responsibility, and the government

assesses her expressions of remorse as genuine, especially given that she has provided assistance to the FBI to advance other investigations without any specific guarantees of consideration.[8]

*Specific Deterrence*

Though her social media posts reveal her plans to attend the riot and her advanced knowledge that violence was not only possible but probable, Ferguson's conduct in comparison to others was on the low end of the spectrum. Nonetheless, as with other defendants who made the conscious decision to unlawfully enter the Capitol during a riot, and who knowingly and willfully spent 45 minutes inside the building during that riot, specific deterrence is warranted in this case.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress. This Court must sentence Ferguson based on her own conduct and relevant characteristics but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

Ferguson has pleaded guilty to Count Four of the Information, charging her with parading, demonstrating, and picketing in a Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to

---

[8] Through counsel, Ferguson has responded to the government's questions, reviewed screen captures from CCTV, provided information about two subjects who were subsequently identified with her assistance, and she met with agents for the purpose of conducting an identification procedure.

15

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however. Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

Justin McAuliffe pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. After entering the Capitol building, McAuliffe sat down, and rested in Senator Jeff Merkley's conference room for about half an hour while others smoked marijuana. He later posted pictures he took on January 6th on social media along with boastful comments. When later approached by the FBI, McAuliffe was fully cooperative, voluntarily providing his cell phone and access code; he was forthright and remorseful in his statements to investigators. The government recommended a sentence of 14 days' incarceration, largely based on his entry into a sensitive location. Judge Lamberth sentenced McAuliffe to 60 days' home detention. 21-cr-00608 (RCL).

Richard Barnard pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G). After entering the Capitol building, Barnard proceeded to the Crypt where he witnessed other rioters engaging in acts of violence toward members of the U.S. Capitol Police. Barnard also spent roughly 15-20 minutes inside the Capitol. When later approached by investigators, Barnard was cooperative, admitting to deleting evidence from his phone. The government's recommendation considered multiple mitigating factors, which included, entering into a plea agreement at the first available opportunity, and, most significantly coming to the aid of a police officer in the Crypt who was caught in the mob of rioters. Judge Contreras sentenced Barnard to 30 days' home detention, as part of a 12-month term of probation. 21-cr-00235 (RC).

In this case, the government submits that a sentence of 30 days' home detention, as part of a two-year term of probation, would not create an "unwarranted disparity" with the sentences imposed in those cases because of the similar factors in this case.

### IV. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Ferguson to, 24 months' probation with 30 days to be served on home detention, 60 hours' community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Ferguson's liberty as a consequence of her behavior, while recognizing her early acceptance of responsibility.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:  /s/ Doug Meisel
DOUGLAS MEISEL
NY Bar No. 4581393
Trial Attorney (Detailee)
U.S. Attorney's Office
601 D. Street, N.W.
Washington, D.C.  20530
douglas.meisel@usdoj.go
(202) 923-7821